IN THE UNITED STATES COURT OF APPEALS
FOR THE ELEVENTH CIRCUIT

_____

APPEAL NO. 22-12996-AA
_____

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

v.

ABY RAUL RIVERA TORRES,

Defendant-Appellant.
_____

APPEAL FROM THE UNITED STATES DISTRICT
COURT FOR THE MIDDLE DISTRICT OF FLORIDA
_____

INITIAL BRIEF OF APPELLANT
_____

A. FITZGERALD HALL, ESQ.
Federal Defender

MICHELLE R. YARD, BCS
Research and Writing Attorney
Appellate Division
Fla. Bar Number 14085
201 S. Orange Avenue, Suite 300
Telephone: 407-648-6338
Email: michelle_yard@fd.org
Counsel for Appellant

# Appeal No. 22-12996-AA

## *United States of America v. Aby Raul Rivera Torres*

### CERTIFICATE OF INTERESTED PERSONS

The persons listed below are interested in the outcome of this case:

Corrigan, Honorable Timothy J.

Hall, A. Fitzgerald

Hoppmann, Karin

Jenkins, Honorable Elizabeth A.

Kahn, Conrad B.

Minor victims who identities are protected

Murray, Christopher F.

Nate, Adam Joseph

Nebesky, Suzanne C.

Rhodes, David P.

Rivera Torres, Aby Raul

Scriven, Honorable Mary S.

Siekkinen, Sean

Skuthan, James T.

Sneed, Honorable Julie S.

**Appeal No. 22-12996-AA**

***United States of America v. Aby Raul Rivera Torres***

**CERTIFICATE OF INTERESTED PERSONS – *CONT'D***

Thelwell, Lisa Marie

Yard, Michelle R.

No publicly traded company or corporation has an interest in the outcome of this appeal.

## STATEMENT REGARDING ORAL ARGUMENT

Mr. Aby Raul Rivera Torres respectfully requests oral argument. It is submitted that argument by counsel familiar with the issue, facts, and record on appeal will provide this Honorable Court with assistance in resolving this case.

TABLE OF CONTENTS

Certificate of Interested Persons ............................................. C1

Statement Regarding Oral Argument ......................................... i

Table of Authorities ................................................................. v

Statement of Subject Matter and Appellate Jurisdiction ....................... ix

Statement of the Issues ............................................................. 1

Statement of the Case ............................................................. 1

    I.    Course of Proceedings ................................................. 1

    II.    Statement of the Facts ................................................. 2

        A.    The Motion to Suppress ................................... 2

        B.    The Trial Proceedings ..................................... 3

        C.    The Presentence Investigation ......................... 6

        D.    Sentencing ...................................................... 8

            1. Mr. Rivera Torres' Sentencing Memorandum ......... 8

            2. The Sentencing Hearing ........................... 9

                a. Mr. Rivera Torres' USSG § 2G2.2(b)(5) Pattern Enhancement Objection (PSR ¶ 43)........ 9

                b. The Chapter Four Pattern Enhancement Objection, § 4B1.5(b)(5) (PSR ¶ 54) ................... 13

                c. Witness Testimony ......................................... 15

d. Guideline Objection Rulings on Pattern & Final Argument .................................................. 15

e. Imposition of Sentence ................................... 18

III. Standards of Review ............................................ 19

Summary of the Arguments .................................................... 20

Arguments and Citations of Authority ................................. 23

I. The district court abused its discretion in denying Mr. Rivera Torres' motion to suppress without affording him an evidentiary hearing when material facts were in dispute ..................................................................... 23

II. The district court erred when it denied Mr. Rivera Torres' motion to suppress based on material disputed facts when, in violation of the Fourth Amendment, law enforcement encouraged, knew of, or acquiesced in the intrusive conduct that led to the discovery of the disputed evidence and derivative fruits ................................ 30

III. The district court erred in denying the judgment of acquittal .............................................................. 33

IV. The district court erred in applying the guideline "pattern" enhancements .................................................. 35

A. The district court erred in applying the "sexual abuse or exploitation" pattern enhancement pursuant to USSG § 2G2.2(b)(5) because the Aggravated Sexual Assault of a Child in Texas predicate which the Court relied on was not proven by a preponderance of the credible, factual evidence and did not lawfully constitute "sexual abuse or exploitation." .................................... 35

B. The district court erred in applying the Chapter Four enhancement pursuant to USSG § 4B1.5(b)(1) for "pattern of activity involving prohibited sexual conduct" because the Aggravated Sexual Assault of a Child in Texas was not proven by a preponderance of the evidence by credible, factual evidence, and neither was the necessary fact of different occasions for the Florida sexual conduct ........................................................................... 42

Conclusion ............................................................................ 45

Certificate of Compliance with Type-Volume Limit ............................... 46

Certificate of Service ................................................................. 46

TABLE OF AUTHORITIES

**Cases**                                                        **Page(s)**

*United States v. Asante*, 782 F.3d 639 (11th Cir. 2015) .........................20

*United States v. Carter*, 566 F.3d 970 (11th Cir. 2009)..........................19

*United States v. Cleveland*, 38 F.3d 1092 (9th Cir. 1994) ...............27, 32

*United States v. Dimitrovski*, 782 F.3d 622 (11th Cir. 2015) ................38

*United States v. Evans*, 344 F.3d 1131 (11th Cir. 2003) ........................20

*United States v. Feliciano*, 761 F.3d 1202 (11th Cir. 2014) ..................39

*United States v. Green*, 764 F.3d 1352 (11th Cir. 2014).........................38

*United States v. Licavoli*, 604 F.2d 613 (9th Cir. 1979),

   *cert. denied*, 446 U.S. 952 (1980).........................................................28

*United States v. Mathauda*, 740 F.3d 565 (11th Cir. 2014) ..................20

*United States v. Morin*, 417 F. App'x 885 (11th Cir. 2011) ...................40

*United States v. Pena*, 961 F.2d 333 (2d Cir. 1992)..........................28, 29

*United States v. Pineiro*, 389 F.3d 1359 (11th Cir. 2004)......................38

*United States v. Reed*, 15 F.3d 928 (9th Cir. 1994) ..........................27, 32

*United States v. Reme*, 738 F.2d 1156 (11th Cir. 1984)...................11, 36

*United States v. Richardson*,

   764 F.2d 1514 (11th Cir. 1985) ........................................ 19, 21, 28, 29

**Cases**                                                                  **Page(s)**

*United States v. Steiger*, 318 F.3d 1039 (11th Cir. 2003) .............. *passim*

*United States v. Walther*, 652 F.2d 788 (9th Cir. 1981) .................. 27, 32

*United States v. Williams,* 527 F.3d 1235 (11th Cir. 2008).................. 20

**Statutes**                                                               **Page(s)**

U.S. Const. amend IV...................................................................... *passim*

U.S. Const. amend XIV .................................................................. 2, 23

18 U.S.C. § 2241 ................................................................................. 39

18 U.S.C. § 2242 ................................................................................. 39

18 U.S.C. § 2243 ................................................................................. 39

18 U.S.C. § 2244 ................................................................................. 40

18 U.S.C. § 2251(a)-(c)................................................................. 17, 39

18 U.S.C. § 2251(d)(1)(B)................................................................. 39

18 U.S.C. § 2251(e) ............................................................................ 17

18 U.S.C. § 2251A.............................................................................. 39

18 U.S.C. § 2252(a)(2)........................................................................ 17

18 U.S.C. § 2252(a)(4)(B).................................................................. 17

18 U.S.C. § 2252(b)(1)........................................................................ 17

18 U.S.C. § 2252(b)(2)........................................................................ 17

**Statutes**                                                                **Page(s)**

18 U.S.C. § 2260(b) ........................................................... 39

18 U.S.C. § 2421 ............................................................... 39

18 U.S.C. § 2422 ............................................................... 39

18 U.S.C. § 2423 ............................................................... 39

18 U.S.C. § 3231 ............................................................... vii

18 U.S.C. § 3583(k) ........................................................... 18

18 U.S.C. § 3742 ............................................................... vii

28 U.S.C. § 1291 ............................................................... vii

Fed. R. Crim. P. Rule 12(b)(3)(C) ...................................... 2

Fed. R. Crim. P. Rule 29 .................................................. 22

USSG § 2G1.1 ................................................................. 8

USSG § 2G2.1 ................................................................. 6

USSG § 2G2.2 .............................................................. 6, 38

USSG § 2G2.2(b)(5) ....................................................... 15

USSG § 2G2.2 cmt. n.1 ................................................... 40

USSG § 2G2.2(b)(5) ................................................. *passim*

USSG § 2G2.2(b)(6) ....................................................... 8

USSG § 2G2.2, cmt. n.1 .............................................. 39, 40

**Statutes**                                                    **Page(s)**

USSG § 4B1.5 ................................................................... 15, 43

USSG § 4B1.5(b)(1) ........................................................ 22, 42

USSG § 4B1.5(b)(5) .......................................................... 8, 13

USSG § 5G1.2(b) ................................................................... 7

## STATEMENT OF SUBJECT-MATTER AND APPELLATE JURISDICTION

This is a direct appeal in a criminal case. The final judgment of the United States District Court for the Middle District of Florida, Tampa Division, was entered on September 2, 2022. Doc. 78. The district court had original jurisdiction pursuant to 18 U.S.C. § 3231.

Mr. Rivera Torres timely filed a notice of appeal on September 6, 2022. Doc. 80. This Court has jurisdiction pursuant to 28 U.S.C. § 1291 and 18 U.S.C. § 3742.

## STATEMENT OF THE ISSUES

I.  Whether the district court abused its discretion in denying Mr. Rivera Torres' motion to suppress without affording him an evidentiary hearing when material facts were in dispute?

II.  Whether the district court erred when it denied Mr. Rivera Torres' motion to suppress based on material disputed facts when, in violation of the Fourth Amendment, law enforcement encouraged, knew of, or acquiesced in the intrusive conduct that led to the discovery of the disputed evidence and derivative fruits?

III.  Whether the district court erred in denying the judgment of acquittal?

IV.  Whether the district court erred in applying the guideline "pattern" enhancements?

## STATEMENT OF THE CASE

## I.    COURSE OF PROCEEDINGS

A superseding indictment charged Mr. Rivera Torres with five offenses: Production of Child Pornography (count one); Distribution of Child Pornography (counts two through four); and Possession of Child Pornography of a Minor Who Had Not Attained Twelve Years of Age (count five). Docs. 44, 78. Following the denial of his Motion to Suppress, the case proceeded to a non-jury trial where the district court found Mr. Rivera Torres guilty of all counts. Doc. 68. The court sentenced him to a total term of 1,320 months' imprisonment followed by ten years of

supervised release. Doc. 78. He remains incarcerated pursuant to that sentence.

## II.   STATEMENT OF THE FACTS

### A.   THE MOTION TO SUPPRESS

Mr. Rivera Torres filed a pretrial Motion to Suppress Unlawful Seizure and Search of Cellphone pursuant to the Fourth and Fourteenth Amendments of the United States Constitution and Rule 12(b)(3)(C) of the Fed. R. Crim. P. seeking the suppression of his Samsung cellphone and all derivative evidence flowing from the fruits of the unlawful seizure and search of the cellphone. Doc. 27.

The motion argued that, in violation of the Fourth and Fourteenth Amendments, law enforcement searched Mr. Rivera Torres' boat (in which he maintained a reasonable expectation of privacy) without judicial authorization as it was outside the scope of the issued search warrants and did not otherwise fall within an exception to the search warrant requirement. Doc. 27 at 8–9. The motion asserted that law enforcement used, knew, or acquiesced in a child or children acting as government agent(s) to facilitate the search and seizure for law enforcement. Doc. 27 at 10–13. Mr. Rivera Torres requested an

evidentiary hearing and argument on the motion. Doc. 28. The government opposed relief. Doc. 33.

The district court denied the motion without granting an evidentiary hearing. Doc. 38. The district court found that "[t]he facts do not support Defendant's assertion that the Government knew of and acquiesced in the minor child's intrusive conduct" and that "the minor child searched the boat and retrieved the cellphone of her own volition." Doc. 38 at 4, 6. The district court determined that the Mr. Rivera Torres "fail[ed] to satisfy the first factor under the Eleventh Circuit's test: law enforcement's encouragement of, knowledge of, or acquiescence in the intrusive conduct that led to the discovery of the challenged evidence." Doc. 38 at 6 (citing *United States v. Steiger*, 318 F.3d 1039, 1045 (11th Cir. 2003)). Because the district court determined there were "no disputed issues of material fact pertinent to the resolution of the motion," the Motion for Evidentiary Hearing was also denied. Doc. 38 at 6–7.

### B.  THE TRIAL PROCEEDINGS

For trial, Mr. Rivera Torres consented to a non-jury "stipulated facts bench trial." Docs. 40 at 2; 42 at 1; *see also* Doc. 60 (waiver of right to trial by jury); Doc. 91 at 6–7, 10–11 (trial). The stipulated facts, for

purposes of the bench trial, were entered in advance through a Stipulation of the Parties. Doc. 55. The nine paragraphs of stipulated facts were:

1.    On or about July 20, 2021, the defendant used his Kik account to distribute a series of five images of what appear to be a light skinned female child, approximately 8 to 12 years old ("Minor Victim 1") from the waist down wearing floral print shorts. In the images, Minor Victim 1 is lying in bed with pink colored sheets with a unicorn and rainbow print. There is also a heart shaped, green colored pillow in the background. The last image in the series is of Minor Victim 1 with her buttocks exposed and an adult male's hand is present and manipulated the buttocks to expose her anus.

2.    On or about July 22, 2021, the defendant used his Kik account to distribute a series of six images of Minor Victim 1 and the same bed sheets as described in paragraph one. In these images, however, Minor Victim 1 is wearing a green colored shirt and green colored shorts with a heart and dolls printed on them. Two of the images in this series depict an adult male's hand pulling the green colored shorts to the side and exposing Minor Victim 1's anus and vaginal area.

3.    On or about August 2, 2021, the defendant used his Kik account to distribute a single image of what appears to be an adult male's penis exposed through tan colored shorts penetrating the vaginal area of Minor Victim 1, with Minor Victim 1's buttocks exposed and facing the camera. This image was created using the "camera" or "live" function on the defendant's Kik account on or about August 2, 2021.

4.    On or about August 2, 2021, the defendant used his Kik account to distribute a single image of what appears to be an adult male's penis penetrating or attempting to penetrate the

anus of Minor Victim 1, with Minor Victim 1's anus exposed and facing the camera.

5.    Minor Victim 1's mother reviewed several sanitized versions of the child sex abuse images described in paragraphs one through and four. The mother of the child positively identified Minor Victim 1, Minor Victim 1's bedsheets and pajamas. The mother also positively identified the defendant's penis, shorts, sandal, hand, and tattoo in several of the child sex abuse images described in paragraphs one through and four.

6.    On November 13, 2021, law enforcement officers conducted a search warrant at the defendant's residence located in Spring Hill, Florida, which is within the Middle District of Florida. Agents located and seized the same bed and bedsheets that were utilized to produce child sex abuse material of Minor Victim 1 described in paragraphs one, two, three, and four.

7.    On November 13, 2021, law enforcement officers interviewed the defendant. Post-*Miranda*, the defendant admitted to law enforcement officers that he had produced the child sex abuse images of Minor Victim 1 described in paragraphs one, two, three, and four.

8.    At the time of the search warrant, Minor Victim 1 found the defendant's cellphone, a black Samsung cellphone with IMEI 355464111428867, in the defendant's boat that had been parked in the driveway of the defendant's residence. Minor Victim 1 provided the defendant's cellphone to law enforcement officers, who subsequently searched it pursuant to a search warrant.

9.    A forensic analysis of the defendant's cellphone revealed that the defendant was in possession of approximately 667 total images of child sexual abuse material ("CSAM"). Approximately 60 of these CSAM images were considered

visually unique and not duplicates. Approximately 43 of these images depicted the Minor Victim 1. The remaining 17 CSAM images depicted several minor females ranging in approximate ages from 4 to 14 years old.

Docs. 55 at 1–3; 91 at 14–15.

Mr. Rivera Torres' bench trial lasted 34 minutes. Doc. 91. Opening statements were waived and no witnesses testified. Doc. 91 at 13. During the trial, Mr. Rivera Torres objected to the introduction of Exhibits 1 – 7 based on the denial of the motion to suppress. Doc. 91 at 15–22. The district court overruled Mr. Rivera Torres' objection to the exhibits and admitted the evidence. Doc. 91 at 22.

After the government rested, Mr. Rivera Torres moved for a judgment of acquittal, which the district court denied. Doc. 91 at 22–23. The defense then rested. Doc. 91 at 23. No closing arguments were made. Doc. 91 at 23. Mr. Rivera Torres was convicted of all five counts. Doc. 91 at 23–24.

### C.    THE PRESENTENCE INVESTIGATION

In anticipation of sentencing, U.S. Probation prepared a presentence investigation report (PSR). Doc. 71. The final PSR (filed August 10, 2022) determined a total offense level of 43 under USSG §§ 2G2.1 and 2G2.2. Doc. 72 (PSR ¶¶ 31, 40, 57). Mr. Rivera Torres' prior

criminal history placed him in criminal history category II, providing an advisory Guidelines range of 1,320 months.[1] PSR ¶¶ 71, 123.

Both the government and Mr. Rivera Torres objected to the presentence report before sentencing. *See* Doc. 72 at 110–19. The government lodged one objection arguing that duplicate images should be counted separately to calculate the guidelines. Doc. 72 at 110. Mr. Rivera Torres lodged multiple objections. Doc. 72 at 110–19. First, he objected to the application of the 5-level offense enhancement for pattern of activity involving "sexual abuse or exploitation" of a minor pursuant to USSG § 2G2.2(b)(5) applied in paragraph 41 (initial), paragraph 43 (final). Doc. 72 at 111–12, 118. For that, he denied the predicate criminal allegation arising from a pending Texas criminal case in which he had not been convicted.[2] *Id.*

---

[1]    Based on a total offense level of 42 and a criminal history category of II, the guideline imprisonment range was life. PSR ¶ 123. But the statutorily authorized maximum sentences totaled less than the maximum of the applicable guideline range. *Id.* Thus, the guideline range became 1,320 months pursuant to USSG § 5G1.2(b). *Id.*

[2]    United States Probation stated that if this objection were sustained, the total offense level would remain the same (level 43). Doc. 72 at 112, 113; *see also* Doc. 96 at 36.

Next, Mr. Rivera Torres objected to the application of the 5-level offense increase for "pattern of activity involving prohibited sexual conduct" against minors pursuant to USSG § 4B1.5(b)(5) applied in paragraph 52 (initial), paragraph 54 (final). Doc. 72 at 111–12, 118. He argued that there was not sufficient, reliable evidence to support the application of the enhancement. *Id.* United States Probation agreed that if this objection were sustained, the total offense level would be lowered to 39 for a reduced guideline range of 292–365 months. Doc. 72 at 113.[3]

**D.    SENTENCING**

**1.    Mr. Rivera Torres' Sentencing Memorandum**

Before sentencing, Mr. Rivera Torres filed a sentencing memorandum seeking a sentence to 240 months' incarceration followed by 10 years of supervised release. Doc. 74 at 1. Mr. Rivera Torres detailed that this "total sentence of combining both pertinent mandatory-

---

[3]    Finally, while agreeing that the enhancement was correctly applied, Mr. Rivera Torres also submitted that a downward departure or variance should be considered given in consideration of the 2-level enhancement that applied pursuant to USSG § 2G2.2(b)(6) for use of a computer or interactive computer service because that enhancement "fails to distinguish the seriousness of the offense conduct between" defendants as it applies to the "vast majority of defendants sentenced under USSG § 2G1.1 – 94.2% in Fiscal Year 2020." *Id.* at 118.

minimum sentences as well as implementing a stricter form of supervised release – along with the lifetime notification requirements related to federal, state, and local sex offender registration laws – is a sentence that is sufficient but not greater than necessary to punish Mr. Rivera Torres and maintain the safety of society." Doc. 74 at 2. The government also field a sentencing memorandum. Doc. 75.

### 2. The Sentencing Hearing

At sentencing, Mr. Rivera Torres maintained his objections made in the presentence report as to both pattern enhancements, which were overruled. Doc. 96 at 5. The government also maintained its objection to the calculation of the duplicate images, which was also overruled. Doc. 96 at 6–11.

### a. Mr. Rivera Torres' USSG § 2G2.2(b)(5) Pattern Enhancement Objection (PSR ¶ 43)

Mr. Rivera Torres' objected to the application of the pattern enhancement in USSG § 2G2.2(b)(5), PSR ¶ 43, as well as the Chapter 4 pattern enhancement in paragraph 54. Doc. 96 at 12. The government argued that the district court should overrule both objections, consistent with Probation's assessment in the presentence report. Doc. 96 at 12.

9

For the USSG § 2G2.2(b)(5), PSR ¶ 43 enhancement, the government's supporting predicate was a 2020 pending offense in Texas related to a different alleged child victim that the government contended demonstrated an adequate pattern of activity despite that Mr. Rivera Torres had not been convicted. Doc. 96 at 12–13, 15. As the government saw it, "the fact that he has not yet been convicted of that offense is irrelevant as it relates to determining whether it's a pattern of activity under the guideline." Doc. 96 at 12–13, 15. The government contended that it "can rely on the information provided by the police report" to support the application of the enhancement. Doc. 96 at 14.

When the district court asked whether the government could "prove" the Texas offense, the government stated that it was "rely[ing] on the information that's already contained in the PSR as it relates to his criminal history in paragraph 74, it outlines the conduct that occurred." Doc. 96 at 13. The government then argued that the information in paragraph 74 "is sufficiently reliable. It came from a police report. There is an indictment outlining the alleged offense." Doc. 96 at 16.

Mr. Rivera Torres' counsel reiterated that Mr. Rivera Torres "den[ied] that anything happened in Texas" including the allegation in

10

paragraph 74. Doc. 96 at 13–14; *see also* Doc. 72 at 111–12, 118. Mr. Rivera Torres' counsel argued that if the district court were going to rely on hearsay (and double hearsay), as urged by the government, to apply the enhancement, then "the Court would need to make explicit findings on factors of credibility" based on one of the permissible ways that the government can establish credibility pursuant to *United States v. Reme*, 738 F.2d 1156 (11th Cir. 1984). Doc. 96 at 15.

The government then called a witness, Samantha Saenz, the former girlfriend of Mr. Rivera Torres and mother of the alleged Texas victim. Doc. 96 at 16. Both the government and Ms. Saenz agreed that Ms. Saenz was not present at the time of any alleged sexual abuse in Texas. Doc. 96 at 17; *see also* Doc. 96 at 33. Nevertheless, Ms. Saenz relayed an incident in which her daughter reported that Mr. Rivera Torres made her touch his private area. Doc. 96 at 24. She also explained that when the police were called soon after, the daughter retracted the allegation. Doc. 96 at 24. She explained that following the police investigation and interviews, "they declared because of her saying no and then just shutting down and not speaking on it anymore, that it didn't happen." Doc. 96 at 25. She explained that after a while, she continued her relationship with Mr.

Rivera Torres despite her daughter's allegation because her daughter was "telling [her] that nothing happened." Doc. 96 at 25–26.

After the relationship with Mr. Rivera Torres and Ms. Saenz ended, Ms. Saenz "let her [daughter] know that he was dangerous," and then the daughter "came forth and let [her] know her truth." Doc. 96 at 28. Ms. Saenz claimed that the daughter said that her initial complaint in 2018 did happen, as well as additional conduct. Doc. 96 at 29–30. On cross-examination, Ms. Saenz reaffirmed that she never witnessed any inappropriate conduct between Mr. Rivera Torres and her daughter. Doc. 96 at 33.

Before the district court ruled on the objection to the pattern enhancement, Mr. Rivera Torres' counsel argued that the evidence presented by the government was exclusively hearsay and "coming from the alleged victim in the case in Texas who at one point retracted the allegations." Doc. 96 at 34. He urged that there was no evidence that the statements the alleged victim made to the witness or law enforcement were under oath, that the witness was not present for that statement to law enforcement or the prosecutor, that there was no opportunity at any point for cross-examination, and that the district court as fact-finder

could not evaluate the demeanor and credibility of the declarant so that the allegations lacked sufficient corroboration, reliability, and trustworthiness. Doc. 96 at 34. Thus, Mr. Rivera Torres "object[ed] to any usage of that allegation to support any enhancement." Doc. 96 at 35.

### b. The Chapter Four Pattern Enhancement Objection, § 4B1.5(b)(5) (PSR ¶ 54)

Mr. Rivera Torres also objected to the pattern enhancement for "pattern of activity involving prohibited sexual conduct" against minors pursuant to USSG § 4B1.5(b)(5) in Chapter 4 as described in presentence report paragraph 54. Doc. 72 at 111–12, 118; Doc. 96 at 12. Mr. Rivera Torres reiterated his earlier objections and again denied all offense conduct related to the alleged child victim in Texas, as well as that the evidence supported that the images described in presentence report paragraphs 12, 13, and 14 resulted from three separate occurrences of sexual contact with the Florida victim.[4] Doc. 96 at 17.

The government contended that like the other pattern enhancement, the conduct described in presentence report paragraph 74

---

[4]    The government conceded that "[t]here is no metadata associated with those images, so [it was] unable to confirm the creation date." Doc. 96 at 18.

13

also supported the Chapter 4 pattern enhancement, as did the images described in presentence report paragraphs 12, 13, and 14 because they were produced on different occasions. Doc. 96 at 17. As evidence to support its different occasions contention, the government stated that it was sufficient that the child was wearing different clothing in each photo and that she reported that the sexual abuse had been ongoing. Doc. 96 at 17–18. The government also contended that because the images were *distributed* on separate dates, that "would also kind of corroborate that they were likely produced on separate occasions." Doc. 96 at 18. The government conceded that it did not have any witness that could "shed any additional light on the images, suggesting different dates." Doc. 96 at 20–21.

Mr. Rivera Torres argued in response that different clothing "is not enough" to prove the necessary "multiple unrelated occasions" to meet the § 4B1.5 enhancement because the child could have changed clothes on the same occasion. Doc. 96 at 19. The defense argued that "because we don't have the metadata, we don't know that those images weren't created on the same day" and that *distribution* dates cannot show separate offenses of sexual activity for the independent acts necessary

under § 4B1.5. Doc. 96 at 19–20. Mr. Rivera Torres also raised the same objections about the hearsay evidence as he discussed for the USSG § 2G2.2(b)(5) objection to presentence report paragraph 43, discussed above.

Both the government and defense agreed with United States Probation that if this objection were sustained, the total offense level would be lowered to 39 for a guideline range of 292–365 months. Doc. 96 at 36; *see also* Doc. 72 at 113.

### c.    Witness Testimony

The government called the victim's father to testify and he  gave a victim impact statement. Doc. 96 at 37. One other witness, the mother of Mr. Rivera Torres' firstborn child, was called and testified over defense objection to relevance. Doc. 96 at 39–41. The government then recalled Ms. Saenz who read her daughter's and her own statement that had previously been submitted to the district court. Doc. 96 at 43–49.

Mr. Rivera Torres declined to allocute. Doc. 96 at 49, 52–53.

### d.    Guideline Objection Rulings on Pattern & Final Argument

The district court overruled the defense objections to both the pattern of activity with the Texas allegations and the Florida conduct,

resulting in the application of both five-level offense enhancements. Doc.

96 at 49. In ruling the district court stated:

> The Court finds that the testimony of the mother, coupled with the indictments in Texas, the similarities of the conduct of the defendant with respect to the victim here and the victim in Texas, all support a finding a reliability of the hearsay that's offered to support the enhancement in this case.
>
> The defendant has had an opportunity to challenge the statements by his own testimony or cross-examination of the witness or the offering of any additional information he would like to offer and has declined to do so.
>
> The Court is aware that the initial victim in Texas originally made an allegation and recanted that allegation, but the reasons for the recanting of the allegation are supported by the background and history of the defendant, his displaying firearms, and the child's concern about harm to the mother. And so while in some circumstances recanting and realleging might be supportive of a concern as to reliability, the Court does not find that concern to be supported here.
>
> The mother's observation of the child personally in her response to the behavior that the child alleged is also corroborative of the validity of the child's allegations, and those are things she personally observed and has had to respond to and are not the kinds of things that would be conjured up or faked by the child, and so they further provide indicia of reliability to the allegations the child has raised as communicated by the mother, who had personal observation of those things.
>
> As such, the Court finds that the presentence report properly scores the defendant in this case.

> The Court also declines any request for a variance as to use of a computer, because while some defendants are overscored because of use of a computer, this defendant purposely used a computer on multiple occasions and was a producer of child pornography with the use of computer to the extent that he photographed himself, and so the Court does not believe under the circumstances of this case that the enhancement for the use of computer overstates the defendant's criminal history.

Doc. 96 at 49–51. Mr. Rivera Torres urged the district court to grant a two-level variance related to the computer enhancement in presentence report paragraph 44. Doc. 96 at 49; *see also* Doc. 72 at 118.

The district court then adopted the factual statements and calculations of the guidelines in the presentence report for a total offense level of 43 with a criminal history category of II, leading to an advisory guidelines range of 1,320 months. Doc. 96 at 51; PSR ¶ 123. The minimum possible term of imprisonment on count one was fifteen years (the maximum, thirty years), and on counts two through four the minimum possible term of imprisonment on each count was five years (the maximum on each count, twenty years). Doc. 72 at 1, 25; 18 U.S.C. §§ 2251(a), (e); 2252(a)(2), (b)(1). Count five had no minimum term of incarceration, while the maximum was twenty years. Doc. 72 at 1, 25; 18 U.S.C. §§ 2252(a)(4)(B), (b)(2). The minimum term of supervised release

was five years and the maximum term was life. PSR ¶ 125; 18 U.S.C. § 3583(k). Restitution was set for a later determination. Doc. 96 at 52, 56–57.

### e.    Imposition of Sentence

At first, the district court announced a sentence of life. Doc. 96 at 53–54. Probation then explained that the maximum statutory sentence for each count was lower than life. Doc. 96 at 54. The government then requested that the sentence be imposed as "the maximum on each count consecutively." Doc. 96 at 54. The district court responded that "[i]n order to preserve any challenge against an appeal, the Court believes the defendant deserves to be pronounced life, but for the record the Court imposes a sentence of 360 months as to Count One and 240 months as to Counts Two, Three, Four and Five, all such terms to run consecutively to each other." Doc. 96 at 54. That sentence was ordered to be followed by a ten-year term of the supervised release with various conditions. *Id.*

The district court stated, "[h]aving considered the advisory sentencing guidelines and all of the factors identified therein, the Court finds that this sentence is sufficient but not greater than necessary to comply with the statutory purposes of sentencing" because "his conduct

is unforgivable and egregious and he is a predator, and the only way the Court can ensure the community that the community is safe is that he receive the maximum sentence appropriate under law for the conduct that he has committed as prescribed by law and recommended by the guidelines." Doc. 96 at 57–58.

Mr. Rivera Torres' counsel objected "to the procedural substantive unreasonableness of the sentence" including "the pattern enhancements in paragraphs 43 and 54" as well as the denial of the motion to suppress. Doc. 60 (citing Doc. 38).

## III.    STANDARDS OF REVIEW

I.    A hearing on a defendant's motion to suppress may only be denied where the facts alleged are insufficient to show that relief would be required if they were proven. A court's determination that allegation in a motion to suppress are insufficient, allowing denial without an evidentiary hearing is reviewed for abuse of discretion. *United States v. Richardson*, 764 F.2d 1514, 1527-28 (11th Cir. 1985).

II.    A trial court's denial of a motion to suppress is reviewed de novo. *United States v. Carter*, 566 F.3d 970 (11th Cir. 2009).

III.   This Court reviews de novo the denial of a motion for judgment of acquittal and the sufficiency of the evidence to sustain a conviction, viewing the evidence in the light most favorable to the government and drawing "all reasonable inferences and credibility choices in favor of the jury's verdict." *United States v. Evans*, 344 F.3d 1131, 1134 (11th Cir. 2003).

IV.   When, as here, the government seeks to apply an enhancement under the sentencing guidelines over a defendant's factual objection, it has the burden of introducing sufficient and reliable evidence to prove the necessary facts by a preponderance of the evidence. *United States v. Asante*, 782 F.3d 639, 642 (11th Cir. 2015). This Court reviews the interpretation and application of the Sentencing Guidelines de novo and review the district court's factual findings at sentencing for clear error. *Id.*; *United States v. Williams,* 527 F.3d 1235, 1247-48 (11th Cir. 2008); *United States v. Mathauda*, 740 F.3d 565, 567 (11th Cir. 2014).

## SUMMARY OF THE ARGUMENTS

I.   The district court abused its discretion by denying Mr. Rivera Torres' motion to suppress without granting his request for an evidentiary hearing when material facts were in dispute. In a pretrial

20

motion, Mr. Rivera Torres moved to suppress seized evidence and its derivative fruits. Doc. 27. Mr. Rivera Torres and the government disputed whether law enforcement used, knew, or acquiesced in a child or children acting as government agents to facilitate the search and seizure leading to the cellphone. The district court erred when it determined there was "no disputed issues of material fact pertinent to the resolution of the motion" and denied an evidentiary hearing. Doc. 38 at 6–7. This was error because a defendant must be granted a hearing on his motion to suppress where it alleges facts that, if proven, would require relief. *Richardson*, 764 F.2d at 1527. This case should be reversed and remanded for an evidentiary hearing on the motion to suppress.

II.    The district court erred when it denied the motion to suppress because law enforcement encouraged, knew of, or acquiesced in the intrusive conduct by a private actor that led to the discovery of the disputed evidence and derivative fruits in violation of the Fourth Amendment. Thus, the judgment of conviction should be reversed and this case remanded.

III.    The district court erred in denying the judgment of acquittal

pursuant to Rule 29 based on the stipulated fact bench trial given that direct evidence and derivative fruits that should have been suppressed under the Fourth Amendment were admitted and used at the trial. Doc. 91 at 22–23. Had that evidence been properly suppressed, the remaining evidence would have been insufficient to support the offenses charged in the superseding indictment. Thus, the district court erred in denying Mr. Rivera Torres' motion for a judgment of acquittal and his convictions should be reversed and his case remanded.

IV. It was error for the district court to apply the guideline pattern enhancements where the government failed to introduce sufficient credible, factual predicate evidence to prove either that Mr. Rivera Torres "engaged in a pattern of activity involving the sexual abuse or exploitation of a minor" pursuant to USSG § 2G2.2(b)(5) or engaged in a "pattern of activity involving prohibited sexual conduct" pursuant to USSG § 4B1.5(b)(1). In imposing both five-level guideline enhancements based on the evidence presented, the district court committed clear error.

ARGUMENTS AND CITATIONS OF AUTHORITY

**I.    The district court abused its discretion in denying Mr. Rivera Torres' motion to suppress without affording him an evidentiary hearing when material facts were in dispute.**

In a pretrial motion, Mr. Rivera Torres moved to suppress seized evidence and its derivative fruits. Doc. 27. Mr. Rivera Torres claimed that, in violation of the Fourth and Fourteenth Amendments, law enforcement searched his boat (in which he maintained a reasonable expectation of privacy) without judicial authorization, outside the scope of the issued search warrant, and otherwise without exception to the search warrant requirement. Doc. 27 at 8–9. The motion further alleged that law enforcement used, knew, or acquiesced in a child or children acting as government agent(s) to facilitate that search and seizure for law enforcement. Doc. 27 at 10–13. He requested an evidentiary hearing and argument on the motion. Docs. 27, 28.

In response to Mr. Rivera Torres' motions to suppress, the government opposed relief. Doc. 33. The government contended that the "Fourth Amendment does not apply to searches conducted by private individuals unless they are acting as an instrument or agent of the government" and that the "government did not employ the use of private

individual [sic] to conduct an unlawful search of the defendant's boat." Doc. 33 at 1. The government contended that the "FBI agents did not encourage or instruct the minor victim to retrieve the defendant's cellular phone from the boat." Doc. 33 at 7.

The district court denied the motion. Doc. 38. The district court found that **"[t]he facts** do not support Defendant's assertion that the Government knew of and acquiesced in the minor child's intrusive conduct" and that "the minor child searched the boat and retrieved the cellphone **of her own volition**." Doc. 38 at 4, 6 (emphasis added). The district court determined that Mr. Rivera Torres "fail[ed] to satisfy the first factor under the Eleventh Circuit's test: law enforcement's encouragement of, knowledge of, or acquiescence in the intrusive conduct that led to the discovery of the challenged evidence." Doc. 38 at 6 (citing *Steiger*, 318 F.3d at 1045). As the district court determined there was "no disputed issues of material fact pertinent to the resolution of the motion," so the Motion for Evidentiary Hearing was denied.[5] Doc. 38 at 6–7.

---

[5]    The district court denied the motion to suppress based on factual findings. It did not deny the motion because Mr. Rivera Torres lacked standing, a reasonable expectation of privacy, or because the search was otherwise within the scope of the warrant issued—so those issues of law, or mixed issues or fact and law, are not claimed as error here. Doc. 38.

A pretrial evidentiary hearing was required to determine the factual issues raised by Mr. Rivera Torres' motions to suppress because the district court's factual determination that Mr. Rivera Torres "fail[ed] to satisfy the first factor under the Eleventh Circuit's test: law enforcement's encouragement of, knowledge of, or acquiescence in the intrusive conduct that led to the discovery of the challenged evidence" was based on a disputed material fact between the parties, and thus, an evidentiary hearing was necessary. *See* Doc. 38 at 6 (citing *Steiger*, 318 F.3d at 1045); *see also* Docs. 27, 33.

Mr. Rivera Torres asserted in his motion that law enforcement "**asked** the three minor children, who were still near and around the outside of the Target Residence, if any one of them had seen Mr. Rivera Torres with his cellphone." Doc. 27 at 4 (emphasis added). He also asserted that "**[u]pon being questioned** by LEO 1 the three minor children claimed that they had seen Mr. Rivera Torres with his cellphone inside the Target Residence and, **with the permission and authorization** of law enforcement officers, entered the Target Residence to attempt **to show** law enforcement officers where they had allegedly seen Mr. Rivera Torres using the cellphone inside the Target Residence."

Doc. 27 at 5 (emphasis added). He asserted that "**the minor children aided law enforcement officers in executing the search warrant** of the Target Residence **by directing** law enforcement officers to search the living room couches and the recliners inside the Target Residence." Doc. 27 at 5 (emphasis added). Then "**one of the minor children verbally stated to law enforcement** officers she knew where to look for the Target Cellphone **next**, left the Target Residence, entered the boat that was parked in the driveway outside of the Target Residence, **and located and seized the Target Cellphone** inside the boat near the helm." Doc. 27 at 5 (emphasis added).

Mr. Rivera Torres asserted that "law enforcement officers obviously knew of and acquiesced to the intrusive conduct at issue. Law enforcement officers originally and actively initiated contact with the three minor children outside the Target Residence, **questioned them, and specifically recruited them to help search** for the Target Cellphone inside the Target Residence. When that search was not successful, law enforcement officers then heard the verbal intent of one of the minor children to continue the search for the Target Cellphone elsewhere and **acquiesced** to the conduct of that minor child leaving the

26

Target Residence and conducting the unlawful search of the boat in the

driveway." Doc. 27 at 12 (emphasis added). He then asserted that:

> As to whether the private actor's purpose was to assist law
> enforcement efforts rather than to further their own ends, the
> minor children in Mr. Rivera Torres' case who **assisted law**
> **enforcement** officers in the execution of the search warrant
> did not do so to further their own ends. It was law enforcement
> officers who first initiated contact with the minor children
> outside the Target Residence, it was law enforcement officers
> who questioned the minor children as to their knowledge of
> the possible whereabouts of the Target Cellphone within the
> Target Residence, and it was law enforcement officers who
> coordinated the search of the Target Residence for the Target
> Cellphone with the minor children. One of the minor children
> then continued helping law enforcement officers executing the
> search warrant – while having no legitimate and independent
> motive do so [sic] other than to continue fulfilling the original
> request of law enforcement officers to help search – and in
> doing so exceeded the scope of the search warrant when the
> minor child, as a government agent, unlawfully entered the
> boat and searched it for the Target Cellphone.

Doc. 27 at 13 (citing *United States v. Walther*, 652 F.2d 788, 792 (9th Cir.

1981); *United States v. Reed*, 15 F.3d 928, 931 (9th Cir. 1994); *United*

*States v. Cleveland*, 38 F.3d 1092, 1094 (9th Cir. 1994)). His motion

concluded by asserting that:

> …during the search of the Target Residence and the search of
> the boat **the minor children were acting as government**
> **agents**, and because the search of Mr. Rivera Torres' boat by
> the minor child exceeded the scope of the search warrant it
> was unlawful under the Fourth Amendment, the minor child-

27

government agent seizure of the Target Cellphone inside the
boat was unlawful. . .

Doc. 27 at 13 (emphasis added).

A defendant must be granted a hearing on his motion to suppress
where it alleges facts that, if proven, would require relief. *Richardson*,
764 F.2d at 1527; *United States v. Pena*, 961 F.2d 333 (2d Cir. 1992). The
motion must "in every critical respect be sufficiently definite, specific,
detailed and nonconjectural to enable the court to conclude that a
substantial claim is presented." *Richardson*, 764 F.2d at 1527. If the
motion enables the court to "conclude that contested issues of fact going
to the validity of the search are in question," a hearing is required. *United
States v. Licavoli*, 604 F.2d 613, 621 (9th Cir. 1979), *cert. denied*, 446 U.S.
952 (1980). Mr. Rivera Torres' motion to suppress was specific, detailed,
and nonconjectural. Doc. 27.

In *Pena*, the defendant alleged that he was in a borrowed car, which
he was to finalize purchase of the next day, driving at a safe speed in the
rain, with nothing suspicious in view, when he was stopped for,
apparently, no reason by the DEA, ordered out of his car at gunpoint, and
the car was searched. 961 F.2d at 335-36. Because "[i]t may be, however,
that Pena will be able to establish a legitimate Fourth Amendment

entitlement upon further exploration of the particular facts of the case," Pena had shown enough to entitle him to a hearing. *Id.* at 338.

In *Richardson*, the defendants failed to file sufficient motions to suppress where they alleged standing and lack of probable cause for the arrest, but failed to allege facts that, if true, would establish a reasonable expectation of privacy in the house searched or that police acted with less than probable cause. 764 F.2d at 1527. Two of the defendants also relied on an incorrect legal theory that a warrant was required under their facts. *Id.* As to that theory, there was no need for a hearing because no relief would be required even if the facts were proven.

Here, as described above, Mr. Rivera Torres repeatedly made specific, repeated, clear, factual allegations, that if true, supported his theory of suppression under the Fourth Amendment. Doc. 27. *Richardson* appropriately requires only sufficient allegations of fact, not evidence, be presented in motions to suppress, and reserves sufficient presentation of evidence for evidentiary hearings. The government's contrary allegations merely entrenched the dispute as to the material facts. Doc. 33. Thus, Mr. Rivera Torres was entitled to an evidentiary hearing to resolve the factual disputes and establish the Fourth

Amendment violation. It was an abuse of discretion for the trial court to summarily deny the motion.[6] This case should be reversed and remanded for an evidentiary hearing on the motion to suppress.

## II. The district court erred when it denied Mr. Rivera Torres' motion to suppress based on material disputed facts when, in violation of the Fourth Amendment, law enforcement encouraged, knew of, or acquiesced in the intrusive conduct that led to the discovery of the disputed evidence and derivative fruits.

The district court erred when it denied the motion to suppress. It denied the motion to suppress because it claimed that "[t]he facts do not support Defendant's assertion that the Government knew of and acquiesced in the minor child's intrusive conduct" and that "the minor child searched the boat and retrieved the cellphone of her own volition." Doc. 38 at 4, 6. Thus, the district court determined that the Mr. Rivera Torres "fail[ed] to satisfy the first factor under the Eleventh Circuit's test: law enforcement's encouragement of, knowledge of, or acquiescence in the intrusive conduct that led to the discovery of the challenged evidence." Doc. 38 at 6 (citing *Steiger*, 318 F.3d at 1045).

---

[6]    The suppression issue was preserved at trial. *See* Doc. 91 at 15, 17, 20, 21, 23. And the district court acknowledged that while Mr. Rivera Torres "stipulated to the[] facts, [] he's simultaneously challenging the evidentiary basis of the facts." Doc. 91 at 16.

But after establishing Mr. Rivera Torres' basis for standing, expectation of privacy, and that the search was warrantless (none of which were challenged by the district court's denial of the motion), Mr. Rivera Torres explained that the Fourth Amendment is also implicated when a private individual acts as a government agent or instrument, as here. Doc. 27 at 10 (citing *Steiger*, 318 F.3d at 1045). He discussed both prongs in determining whether a private person should be regarded as a government agent: "(1) whether the government knew of and acquiesced in the intrusive conduct, and (2) whether the private actor's purpose was to assist law enforcement efforts rather than to further his own ends." *Id.*

Mr. Rivera Torres argued that:

44. In Mr. Rivera Torres' case, law enforcement officers obviously knew of and acquiesced to the intrusive conduct at issue. Law enforcement officers originally and actively initiated contact with the three minor children outside the Target Residence, questioned them, and specifically recruited them to help search for the Target Cellphone inside the Target Residence. When that search for the Target Cellphone by the minor children and law enforcement officers was not successful, law enforcement officers then heard the verbal intent of one of the minor children to continue the search for the Target Cellphone elsewhere and acquiesced to the conduct of that minor child leaving the Target Residence and conducting the unlawful search of the boat in the driveway.

45. As to whether the private actor's purpose was to assist law enforcement efforts rather than to further their own ends,

the minor children in Mr. Rivera Torres' case who assisted law enforcement officers in the execution of the search warrant did not do so to further their own ends. It was law enforcement officers who first initiated contact with the minor children outside the Target Residence, it was law enforcement officers who questioned the minor children as to their knowledge of the possible whereabouts of the Target Cellphone within the Target Residence, and it was law enforcement officers who coordinated the search of the Target Residence for the Target Cellphone with the minor children. One of the minor children then continued helping law enforcement officers executing the search warrant – while having no legitimate and independent motive do so other than to continue fulfilling the original request of law enforcement officers to help search – and in doing so exceeded the scope of the search warrant when the minor child, as a government agent, unlawfully entered the boat and searched it for the Target Cellphone. *See United States v. Walther*, 652 F.2d 788, 792 (9th Cir. 1981); *United States v. Reed*, 15 F.3d 928, 931 (9th Cir. 1994); *United States v. Cleveland*, 38 F.3d 1092, 1094 (9th Cir. 1994).

46. Therefore, during the search of the Target Residence and the search of the boat the minor children were acting as government agents, and because the search of Mr. Rivera Torres' boat by the minor child exceeded the scope of the search warrant it was unlawful under the Fourth Amendment, the minor child-government agent seizure of the Target Cellphone inside the boat was unlawful as "fruit of the poisonous tree," and both the seizure and subsequent search of the Target Cellphone should be suppressed.

Doc. 27 at 12–13. Because Mr. Rivera Torres established, factually and legally, that law enforcement encouraged, knew of, or acquiesced in the intrusive conduct that led to the discovery of the disputed cellphone evidence, the district court erred in denying the motion and not

suppressing the evidence and derivative fruit evidence. And the district court acknowledged that while Mr. Rivera Torres "stipulated to the[] facts, [] he's simultaneously challenging the evidentiary basis of the facts." Doc. 91 at 16. The judgment of conviction should thus be reversed and this case remanded for retrial.

### III. The district court erred in denying the judgment of acquittal.

At the close of the government's case, Mr. Rivera Torres moved for a Rule 29 judgment of acquittal based on the stipulated facts to preserve the record related to the motion to suppress given that direct and derivative fruit evidence was admitted and used at trial which flowed from the unlawful search and seizure of the cellphone. Doc. 91 at 22–23. The district court acknowledged this at trial when it instructed the government to introduce evidence that it otherwise did not plan to introduce: "in the abundance of caution, it seems to me the government needs to introduce its evidence at trial over the objection of the defendant preserved for appeal, because I don't – he stipulated to these facts, but he's simultaneously challenging the evidentiary basis of the facts." Doc. 91 at 16; see also Doc. 91 at 15 (stating government did not intend to

introduce any exhibits). The district court then denied the Rule 29 motion. Doc. 91 at 23.

For the same preservation reasons he raised below, Mr. Rivera Torres raises the denial of judgment of acquittal here related to his above arguments in sections I and II that direct and derivative fruit evidence, which should have been suppressed under the Fourth Amendment, was admitted and used at his trial. Had that direct and derivative fruit evidence been properly suppressed, the exhibits and many of the stipulated facts on which the district court relied in denying the judgment of acquittal (and ultimately, determining guilt) would not have been in evidence. Doc. 91 at 15.

At trial, objecting to the direct and derivative fruit evidence, defense counsel explained, "All those exhibits flow from the cellphone at issue in the defense's motion to suppress at Document 27. The reason we're going through this bench trial is to preserve that matter for appellate purposes, Your Honor. I just want to make sure that on the record that ***we do object to those exhibits and any facts flowing from them*** for the purposes of preserving that matter for appellate purposes, Your Honor." Doc. 91 at 15–16 (emphasis added). Thus, if the evidentiary

34

hearing and suppression motion had been properly granted, the remaining facts and exhibits in evidence would have been insufficient to support the offenses charged in the superseding indictment. Thus, the district court erred in denying Mr. Rivera Torres' motion for a judgment of acquittal and his convictions should be reversed.

IV. **The district court erred in applying the guideline "pattern" enhancements.**

A. **The district court erred in applying the "sexual abuse or exploitation" pattern enhancement pursuant to USSG § 2G2.2(b)(5) because the Aggravated Sexual Assault of a Child in Texas predicate which the Court relied on was not proven by a preponderance of the credible, factual evidence and did not lawfully constitute "sexual abuse or exploitation."**

At the sentencing hearing, over defense objection, the district court increased Mr. Rivera Torres' offense level by five levels based on its finding that he had "engaged in a pattern of activity involving the sexual abuse or exploitation of a minor" pursuant to USSG § 2G2.2(b)(5). PSR ¶ 43; Doc. 96 at 12.

The government's supporting evidence of the 2020 predicate enhancement was the indictment as mentioned in the PSR (of which Mr. Rivera Torres had not been convicted), information from the police report

35

in the PSR, and additional hearsay as reported by the alleged victim's mother at the sentencing hearing. Doc. 96 at 13-14; PSR ¶¶ 43, 74.

On the other hand, Mr. Rivera Torres "den[ied] that anything happened in Texas" including the allegation in paragraph 74. Doc. 96 at 13–14; *see also* Doc. 72 at 111–12, 118. Mr. Rivera Torres' counsel argued that if the district court were going to rely on hearsay (and double hearsay) to apply the enhancement as urged by the government, then "the Court would need to make explicit findings on factors of credibility" based on one of the permissible ways that the government can establish credibility pursuant to *United States v. Reme*, 738 F.2d 1156 (11th Cir. 1984). Doc. 96 at 15 (citing *Reme*, 738 F.2d 1156).

The government then called Samantha Saenz, the mother of the alleged Texas victim and former girlfriend of Mr. Rivera Torres. Doc. 96 at 17; *see also* Doc. 96 at 33. The government agreed that she was not present at the time of any alleged sexual abuse. Doc. 96 at 17; *see also* Doc. 96 at 33. Ms. Saenz relayed an incident in which her daughter reported that Mr. Rivera Torres had told the daughter to touch his private area. Doc. 96 at 24. She also explained that when the police were called soon after, her daughter retracted the allegation. Doc. 96 at 24.

36

She explained that following the police investigation and interviews, "they declared because of her [daughter] saying no and then just shutting down and not speaking on it anymore, that it didn't happen." Doc. 96 at 25. She explained that after a while, she continued her relationship with Mr. Rivera Torres because her daughter was "telling [her] that nothing happened." Doc. 96 at 25–26.

Later, after the relationship with Mr. Rivera Torres and Ms. Saenz ended, Ms. Saenz "let her [daughter] know that he was dangerous," and then the daughter "came forth and let [her] know her truth." Doc. 96 at 28. Ms. Saenz claimed that the daughter said that her initial complaint in 2018 did happen, as well as additional conduct. Doc. 96 at 29–30. On cross-examination, Ms. Saenz reaffirmed that she never witnessed any inappropriate conduct between Mr. Rivera Torres and her daughter. Doc. 96 at 33.

Before the district court ruled on the pattern objection, Mr. Rivera Torres' counsel reiterated that the testimony was exclusively hearsay (and double hearsay) "coming from the alleged victim in the case in Texas who at one point retracted the allegations." Doc. 96 at 34. He urged that there was no evidence that the statements the alleged victim made to the

37

witness or law enforcement was under oath, the witness was not present for that statement to law enforcement or the prosecutor, there was no opportunity at any point for cross-examination, and the district court as fact-finder was not able to evaluate the demeanor and credibility of the declarant so that the allegations lacked sufficient corroboration, reliability, and trustworthiness. Doc. 96 at 34. Thus, Mr. Rivera Torres "object[ed] to any usage of that allegation to support any enhancement." Doc. 96 at 35.

Still, the district court overruled the defense objection and applied the five-level enhancement under USSG § 2G2.2. Doc. 96 at 49–51.

Findings of fact are reviewed for clear error. *United States v. Green*, 764 F.3d 1352, 1355 (11th Cir. 2014). A factual finding is "clearly erroneous" when, upon review of the evidence, a court is "left with a definite and firm conviction a mistake has been made." *United States v. Dimitrovski*, 782 F.3d 622, 628 (11th Cir. 2015). Clear error occurs when testimony is "contrary to the laws of nature" or "so inconsistent or improbable on its face that no reasonable factfinder could accept it." *United States v. Pineiro*, 389 F.3d 1359, 1366 (11th Cir. 2004) (citation omitted). Testimony "as to facts that the witness physically could not

have possibly observed" is "unbelievable on its face." *United States v. Feliciano*, 761 F.3d 1202, 1206 (11th Cir. 2014) (citation omitted).

As explained in this section, the evidence presented by the government was both factually and legally insufficient, and the district court erred in overruling the objection to the sexual abuse or exploitation pattern enhancement. The district court thus committed clear error by applying the five-level enhancement based on the testimony and evidence presented.

The five-level enhancement in USSG § 2G2.2(b)(5) applies when "the defendant engaged in a pattern of activity involving the sexual abuse or exploitation of a minor." *Id*. The accompanying commentary defines "sexual abuse or exploitation":

> "Sexual abuse or exploitation" means any of the following: (A) conduct described in 18 U.S.C. § 2241, § 2242, § 2243, § 2251(a)-(c), § 2251(d)(1)(B), § 2251A, § 2260(b), § 2421, § 2422, or § 2423; (B) an offense under state law, that would have been an offense under any such section if the offense had occurred within the special maritime or territorial jurisdiction of the United States; or (C) an attempt or conspiracy to commit any of the offenses under subdivisions (A) or (B).

USSG § 2G2.2, cmt. n.1.

The Sentencing Guidelines define "[p]attern of activity involving the sexual abuse or exploitation of a minor":

> [A]ny combination of two or more separate instances of the sexual abuse or sexual exploitation of a minor by the defendant, whether or not the abuse or exploitation (A) occurred during the course of the offense; (B) involved the same minor; or (C) resulted in a conviction for such conduct.

USSG § 2G2.2 cmt. n.1.

But not all sexual conduct qualifies for the pattern enhancement. For instance, "abusive sexual contact" covers a wealth of activity, and not all of it is covered by the pattern enhancement. For instance, the commentary to USSG § 2G2.2(b)(5) specifically does not include 18 U.S.C. § 2244 among the enumerated offenses. Section 2244 prohibits abusive sexual contact, defined as "the intentional touching, *either directly or through the clothing,* of the genitalia, anus, groin, breast, inner thigh, or buttocks of any person with an intent to abuse, humiliate, harass, degrade, or arouse or gratify the sexual desire of any person." *Id.* §§ 2244, 2246(3) (emphasis added). The commentary to § 2G2.2(b)(5) does not include the conduct described in § 2244 in its definition of "sexual abuse or exploitation," *see* USSG § 2G2.2, comment. (n.1); *see also United States v. Morin*, 417 F. App'x 885, 887 n.1 (11th Cir. 2011). It is unclear at best, based on the testimony from the sentencing hearing, what alleged sexual

abuse or exploitation act from 2020 the district court based the pattern enhancement on.

The government's sole witness was not credible because her testimony solely  consisted of unreliable, uncorroborated hearsay and double hearsay. And the government did not meet its factual or legal burden to prove that Mr. Rivera Torres' 2020 predicate conduct from Texas constituted "sexual abuse or exploitation"—again, it was unclear from the hearing exactly what conduct the district court found sufficiently reliably and credibly proven by the evidence as the predicate (the recanted conduct took place in 2018). *See* PSR ¶¶ 43, 74.

Because the allegations were based on unreliable sources, hearsay contained within a police report, and hearsay (and double hearsay) as testified to by Mr. Rivera Torres' ex-girlfriend, the district court clearly erred in relying on the testimony to support the pattern enhancement and overruling Mr. Rivera Torres' challenge to the predicate offense for the "sexual abuse or exploitation" pattern enhancement.

In sum, the district court clearly erred in finding the government's evidence credible and in finding that the government had proven by a preponderance of the evidence that Mr. Rivera Torres had engaged in

"sexual abuse or exploitation" in Texas in 2020, either factually or legally.

The application of the five-level enhancement for pattern of activity was

erroneous.

> **B.     The district court erred in applying the
> Chapter Four enhancement pursuant to
> USSG § 4B1.5(b)(1) for "pattern of activity
> involving prohibited sexual conduct"
> because the Aggravated Sexual Assault of a
> Child in Texas was not proven by a
> preponderance of the evidence by credible,
> factual evidence, and neither was the
> necessary fact of different occasions for the
> Florida sexual conduct.**

At the sentencing hearing, over defense objection, the district court

increased the offense level by another five levels based on its finding that

Mr. Rivera Torres had engaged in a "pattern of activity involving

prohibited sexual conduct" pursuant to USSG § 4B1.5(b)(1). PSR ¶ 54;

Doc. 96 at 17.

As to relying on the Texas offense to apply the pattern

enhancement, the district court erred in relying on the government's

evidence for the same reasons described in subsection A, above, as Mr.

Rivera Torres continued to "object to any usage of that allegation to

support any enhancement." Doc. 96 at 35; *see* subsection A, above.

As to the need for different occasions for the Florida conduct, the government conceded that "[t]here is no metadata associated with those images, so [it was] unable to confirm the creation date." Doc. 96 at 18. Other than the government's circumstantial arguments about the child's changed clothing and the differing dates of image distribution, the government conceded that it did not have any witness that could "shed any additional light on the images, suggesting different dates," but argued that it had sufficiently shown different occasions to establish the requisite pattern by a preponderance of the evidence. Doc. 96 at 20–21.

Mr. Rivera Torres argued in response that different clothing "is not enough" to prove the necessary "multiple unrelated occasions" to meet the § 4B1.5 enhancement because the child could have changed clothes. Doc. 96 at 19. The defense further argued that "because we don't have the metadata, we don't know that those images weren't created on the same day" and that distribution dates cannot show separate occasions for the independent acts of conduct necessary under § 4B1.5. Doc. 96 at 19–20.

As with the above pattern enhancement, the district court again clearly erred when it overruled the defense objections to both the "pattern

of activity involving prohibited sexual conduct" as to the Texas allegation and the Florida offenses having occurred on different occasions as the credible, factual evidence presented proved neither proposed pattern predicate to a preponderance of the evidence. Doc. 96 at 49.[7]

---

[7]    The government and defense agreed with United States Probation agreed that if this objection were sustained, the total offense level would be lowered to 39 for a guideline range of 292–365 months. Doc. 96 at 36; *see also* Doc. 72 at 113.

44

## CONCLUSION

For the above reasons, Mr. Rivera Torres requests that the case be reversed and remanded for further proceedings.

Respectfully submitted,

A. Fitzgerald Hall, Esq.
Federal Defender

*/s/ Michelle R. Yard*
Michelle R. Yard, BCS
Research and Writing Attorney
Florida Bar Number 14085
201 S. Orange Avenue, Suite 300
Orlando, Florida 32801
Telephone 407-648-6338
Email: michelle_yard@fd.org

**CERTIFICATE OF COMPLIANCE WITH TYPE-VOLUME LIMIT**

In accordance with Fed. R. App. P. 32(g)(1), I hereby certify that this brief complies with the type-volume limitation of Fed. R. App. P. 27(d)(2)(A) because this brief contains 9,592 words according to Microsoft Word's word count, excluding the parts of the motion exempted by Fed. R. App. P. 32(f).

*/s/ Michelle R. Yard*
Michelle R. Yard, BCS
Research and Writing Attorney

**CERTIFICATE OF SERVICE**

I hereby certify that on this 17th day of January 2023, a true copy of this *Initial Brief of Appellant* was filed using the Court's Electronic Case Filing system, which will send notification to Sean Siekkinen, Assistant United States Attorney.

*/s/ Michelle R. Yard*
Michelle R. Yard, BCS
Research and Writing Attorney